# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 09-0622(GK) |
| | ) |
| | ) |
| DISTRICT OF COLUMBIA | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff, Gregory Harris ("Plaintiff"), brings this action against Defendant, the District of Columbia ("Defendant"), under 42 U.S.C. § 1983 and various common law claims arising from Plaintiff's arrest.

This matter is now before the court on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot.") [Dkt. No. 17]. Upon consideration of the Motion, Opposition, Reply, the entire record herein, and for the reasons stated below, Defendant's Motion to Dismiss is **granted.**

## I. BACKGROUND

### A. Factual Background[1]

Parties offer markedly different accounts of the underlying incident. Plaintiff is a duly-commissioned Special Police Officer for the District of Columbia. Compl. ¶ 10 [Dkt. No. 1]. On April 7, 2008, members of the District of Columbia Metropolitan Police Department ("MPD") conducted what Defendant terms an "administrative inspection" and Plaintiff terms a warrantless "raid" at Community Development Institute ("CDI") Head Start School, a daycare center located at 444 16th Street, N.E. in Washington, DC, where Plaintiff was on duty. Pl.'s Opp'n at 1; see U.S. Dep't of Health and Human Servs., Admin. For Children and Families, Community Development Institute Fast Facts, available at http://cditeam.org/cdheadstart/facts/.

The MPD officers were assigned to perform the inspection because the MPD Security Officers Management Branch ("SOMB") received a memorandum from Falken Industries, Plaintiff's employer, "requesting a uniform waiver for a special protective detail to work at CDI head start school," and to allow the Falken employees to carry handguns while on duty there. Affidavit of Sgt. Anthony

---

[1]    For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979). Therefore, the facts set forth herein are taken from the Complaint unless otherwise noted.

Moye, Def.'s Mot., Ex. A [Dkt. No. 17-2].  SOMB ordered the inspection after a WALES search showed that none of the listed handguns were on record.  Id.  Plaintiff believes that he had authorization both to work at the daycare center and to carry a gun, based on his employer's verbal notification to SOMB.  Pl.'s Opp'n to Mot. to Dismiss or for Summ. J. at 1-2, 13 ("Pl.'s Opp'n") [Dkt. No. 18].

At the daycare center, the MPD officers observed that Plaintiff's identification badge indicated he was assigned to work at a different location, and that he was not authorized to carry a firearm.  Def.'s Mot. at 1-2.  The MPD ran a search for Plaintiff's gun, and found no record of registration for it.  Id.  The officers arrested Plaintiff and seized "numerous items" of the Plaintiff's personal property and Plaintiff's employer's personal property.  Compl. ¶ 16.

Defendant states that the officers requested to speak to Plaintiff and another officer in private, that Plaintiff led them to an empty classroom, and that the arrest occurred there.  Def.'s Mot. at 1.  Harris, however, describes being arrested by twelve officers with weapons drawn, who forced him to the ground in front of the very schoolchildren he was assigned to protect.  Pl.'s Opp'n at 2, 24.  Parties agree, however, that he then spent the night in jail.  At Plaintiff's presentment hearing, he was released on the condition that he not possess a firearm in the District of

Columbia. Def.'s Mot., Ex. E [Dkt. 17-5]. Based on the affidavit of Sergeant Anthony Moye, the supervising officer at the arrest, the United States Attorney's Office charged Plaintiff with "Carrying a Pistol Without a License [Outside Home or Place of Business], in violation of 22 D.C. Code § 4504(a) (2001 ed.)." However, after Defendant moved to dismiss the case, charges were dismissed on June 16, 2008.

Plaintiff alleges that, on June 11, 2008, he received a letter from Sgt. Moye revoking his Special Police Commission. Compl. ¶ 28. Plaintiff received another letter, dated July 30, 2008, stating that Plaintiff's Special Police Commission was suspended for twenty days. Id. at ¶ 32.[2] The MPD has not returned Plaintiff's personal property.

**B. Procedural Background**

Plaintiff initiated this suit on April 3, 2009, filing a Complaint that contains the following seven counts: deprivation of liberty under the Fourth Amendment, when Plaintiff was arrested without probable cause during a warrantless search (Count I); deprivation of a property interest, under the Fifth Amendment, when his property was seized and never returned (Count II); malicious prosecution of the Plaintiff initiated by Sgt. Moye (Count III);

---

[2] There is much confusion as to whether Plaintiff was revoked, suspended, or both. Plaintiff never filed the letter of June 11, 2008; Defendant filed the letter of July 30, 2008. Because of this confusion, the Court will often refer simply to the "revocation/suspension."

deprivation of a property interest when he was denied the right to work as a Special Police Officer (Count IV); deprivation of a liberty interest, under the Eighth Amendment (Count V), excessive force employed during the search (Count VI); and intentional infliction of emotional distress (Count VII). Counts I, II, IV, V and VI are brought pursuant to 42 U.S.C. § 1983, and Counts III and VII are brought under the common law of the District of Columbia.

The Clerk entered a default judgment against the Defendant on May 21, 2009, after it failed to respond to the Complaint. [Dkt. No. 5]. Defendant filed a Motion to Set Aside Default on June 5, 2009, to which Plaintiff timely replied and which the Court granted on August 17, 2009. The Court ordered Defendant to file an Answer, which both parties have requested be stayed pending resolution of Defendant's Motion to Dismiss. Consent Mot. to Stay Filing of the Answer [Dkt. No. 30]. Defendant then filed the instant Motion on August 25, 2009. The Motion includes two broad arguments: (1) that all claims brought under § 1983 should be dismissed for failure to show that the District of Columbia is liable for his injuries, and (2) that all common law claims should be dismissed because Plaintiff failed to provide notice of the action to the District of Columbia, as required by local law. Defendant presents separate argument for dismissal of each individual claim. Parties completed briefing of the Motion to Dismiss on September 24, 2009.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ][his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint will not suffice, however, if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009) (citing Twombly, 550 U.S. at 557).

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiffs' success . . . must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008)(internal quotation marks and citations omitted).

When deciding a 12(b)(6) Motion to Dismiss, "the Court may consider only the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint

and matters about which the court may take judicial notice." <u>Brown</u>
<u>v. Bureau of Prisons</u>, 498 F. Supp. 2d 298, 301 (D.D.C. 2007); <u>see</u>
<u>Marshall v. Honeywell Technology Solutions Inc.</u>, 536 F. Supp. 2d
59, 65 (D.D.C. 2008)(stating that "where a document is referred to
in the complaint and is central to the plaintiff's claim, such a
document attached to the motion papers may be considered without
converting the motion to one for summary judgment"); <u>Baker v.</u>
<u>Henderson</u>, 150 F. Supp. 2d 13, 15 (D.D.C. 2001).

**B.  Summary Judgment**

"If, on a motion under Rule 12(b)(6) . . . matters outside the
pleadings are presented to and not excluded by the court, the
motion must be treated as one for summary judgment under Rule 56."
Fed. R. Civ. P. 12(d). "However, if the court renders its decision
without reference to the extraneous material, then the motion may
still be treated as one for dismissal." American Sharecom, Inc. v.
Southern Bell Tel. and Tel. Co., Civ. No. 87-1334, 1989 WL 229397,
at *2 (D.D.C.  Aug. 28, 1989); see Basel v. Knebel, 551 F.2d 395
(D.C. Cir. 1977).  "In other words, it is not the submission, but
rather the consideration, of the extraneous documents which renders
the motion one for summary judgment."  American Sharecom, Inc.,
1989 WL 229397 at *2.

Summary judgment is appropriate "when the pleadings,
depositions, answers to interrogatories and admissions on file,
together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A dispute over a material fact is genuine if the evidence is such that a reasonable [fact-finder] could return a [decision] for the non-moving party."  Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact is "material" if it might affect the outcome of the action under the governing law.  Liberty Lobby Inc., 477 U.S. at 248.

## III.  ANALYSIS

### A.  Defendant's Motion to Dismiss the § 1983 Claims in Counts I, II, IV, V, and VI for Failure to State a Claim Is Granted.

Defendant argues that Plaintiff's § 1983 claims in Counts I, II, IV, V, and VI should be dismissed because Plaintiff fails to allege an unconstitutional custom, practice, or policy, which is required to establish a claim against a municipality.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).

To state a claim under § 1983, a plaintiff must allege a deprivation of "rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state, territorial, or District of Columbia law, 42 U.S.C. § 1983, or a practice "so permanent and well settled as to constitute a 'custom or usage' with force of law."  Monell, 436 U.S. at 694.  Under Monell, liability for a Constitutional tort will not attach to a

-8-

municipality merely because the tortfeasor is employed by the municipality. <u>Monell</u>, 436 U.S. at 691 (rejecting <u>respondeat superior</u> liability). Instead, a plaintiff must allege a specific unconstitutional custom, practice, or policy which was the source of the rights violation. <u>Id.</u>

Plaintiff has failed to meet this bedrock requirement for stating a § 1983 claim. Plaintiff simply restated, in each count of his Complaint, the conduct of which he complains and alleges that "[s]uch conduct was the official policy of the Defendant." For example, he alleges that "[t]he unlawful raid, warrantless search and unlawful warrantless arrest of plaintiff," Compl. ¶¶ 40, 74, "[t]he unlawful seizure of Plaintiff's person and property," <u>id.</u> at ¶ 46, "[t]he unlawful denial of Plaintiff's person and property," <u>id.</u> at ¶ 62, and the "excessive conditions" of his release, <u>id.</u> at ¶ 69, were all "the official policy of the Defendant."

None of these phrases constitute a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Defendant]," as mandated in <u>Monell</u>, 436 U.S. at 690. Plaintiff has failed to include any allegations whatsoever demonstrating how the individual actions cited in his Complaint constitute "the official policy" of the District of Columbia. [3]

---

[3]  <u>Cf.</u> <u>Jones v. City of Chicago</u>, 856 F.2d 985, 995-96 (7th Cir. 1988), cited by Plaintiff, which held that the City's
(continued...)

These are the kind of "naked assertion[s]" which both <u>Iqbal</u>, 129 S.

Ct. at 1948, and <u>Twombly</u>, 550 U.S. at 557, have firmly rejected.

Thus, Plaintiff has failed to satisfy a key requirement for stating

a claim under § 1983, and therefore, the Motion to Dismiss the §

1983 Claims in Counts I, II, IV, V, and VI for Failure to State a

Claim is **granted**.[4]

> **B. Defendant's Motion to Dismiss Counts III and VII for Failure to Satisfy the Notice Requirement of D.C. Code § 12-309 Is Granted.**

Defendant argues that Plaintiff's common law claims against the

District of Columbia (Counts III and VII) are barred because

Plaintiff failed to satisfy the mandatory notice requirement for

maintaining such claims against the District. Def.'s Mot. at 8.

Under the governing statute:

---

[3] (...continued)
maintenance of secret "street files" was a custom since "the
practice was department-wide and of long standing, the jury was
entitled to conclude that it had been consciously approved at the
highest policy-making level for decisions involving the police
department."

[4]     Defendant also argues that a single incident such as the
one alleged in this case cannot support a finding of municipal
liability. Def.'s Mot. at 8 (quoting <u>Atchinson v. District of
Columbia</u>, 73 F.3d 418, 422 (D.C. Cir. 1996)). However, "section
1983 does not require a plaintiff . . . to prove multiple
incidences of misconduct <u>if</u> the plaintiff can prove an
unconstitutional municipal policy responsible for a single instance
of misconduct." <u>Amons v. District of Columbia</u>, 231 F. Supp.2d 109,
115-116 (D.D.C. 2002) (citing <u>City of Oklahoma v. Tuttle</u>, 471 U.S.
808, 823-24 (1985)) (emphasis added). Here, Plaintiff has not
alleged, no less proved, an unconstitutional municipal policy
responsible for the incident of April 7, 2008, at the daycare
center.

> An action may not be maintained against the
> District of Columbia for unliquidated damages
> to person or property unless, within six
> months after the injury or damage was
> sustained, the claimant, his agent, or
> attorney has given notice in writing to the
> Mayor of the District of Columbia of the
> approximate time, place, cause, and
> circumstances of the injury or damage. A
> report in writing by the Metropolitan Police
> Department, in the regular course of duty, is
> a sufficient notice under this section.

D.C. Code § 12-309.

Because this provision "represents a waiver of sovereign immunity," Tibbs v. Williams, 263 F. Supp. 2d 39, 43 (D.D.C. 2003), compliance is mandatory and "is to be strictly construed" against the claimant, Gwinn v. District of Columbia, 434 A.2d 1376, 1378 (D.C. 1981). Thus, the "notice is fatally defective if one or more of the statutory elements is lacking," Boone v. District of Columbia, 294 F. Supp. 1156, 1157 (D.D.C. 1968), and no right of action accrues. Gwinn, 434 A.2d at 137; accord Doe by Fein v. District of Columbia, 93 F.3d 861, 870 (D.C. Cir. 1996).

Plaintiff's attorney mailed a notice letter on September 26, 2008. Pl.'s Opp'n at 11. Defendant argues that the letter does not indicate the location of the incident. Defendant's Reply to Pl.'s Opp'n at 1 ("Def.'s Reply") [Dkt. No. 24]. Plaintiff's letter indicates the cause and circumstances of the incident, references the police report of the incident, including the report number, but does not indicate the location of the incident. Pl.'s

Opp'n, Ex. B [Dkt. No. 18-3]. Failure to include the location of the incident is usually fatal.[5]

However, "[t]he police report is an alternative form of notice added to '[take] care of those instances in which actual notice is had by the District of Columbia from the police department, although technical notice may not have been filed by the person injured.'" <u>Miller v. Spencer</u>, 330 A.2d 250, 252 (D.C. App. 1974), quoting H.R. Rep. No.2010, 72d Cong., 2d Sess. 2 (1933). If the police report contains the information required by § 12-309, the report will satisfy the notice requirement. <u>Id.</u> Because Plaintiff failed to attach the police report to his Complaint, it is impossible to discern whether it gives sufficient information to Defendant to comply with § 12-309. Consequently, the Court is

---

[5] Plaintiff cites to a District of Columbia case stating that "with respect to the details of the [notice letter] precise exactness is not absolutely essential," so long as the letter reasonably complies with the statute and "the city is not misled to its prejudice by any defects of description." <u>Hurd v. District of Columbia</u>, 106 A.2d 702, 704 (D.C. 1954). However, <u>Hurd</u> does not excuse Plaintiff from reasonably complying with the statute. In that case, the plaintiff included a location of the underlying incident in her notice letter that was an incorrect address. <u>Id.</u> at 703-04. The court excused the mistake as a reasonable attempt to comply with the statute. <u>Id.</u> at 704. Where plaintiffs have omitted the location of the incident completely, courts have consistently held that notice was defective. <u>Kirkland v. District of Columbia</u>, 70 F.3d 629 (D.C. Cir. 1995); <u>Hunter v. District of Columbia</u>, 943 F.2d 69 (D.C. Cir. 1991).

constrained to **grant** the Motion to Dismiss Counts III and VII on

notice grounds.[6]

**C.    Defendant's Motion to Dismiss Count I for Lack of Standing to Contest the Search at the Daycare Center Is Granted.**

In Count I, Plaintiff asserts a §1983 claim against Defendant

for violation of his Fourth Amendment right against unreasonable

searches and seizures.  Const. Amend. IV; Compl. ¶ 34.  Plaintiff

argues that his arrest was unlawful, as it was made without either

a warrant or probable cause, during an "unlawful raid and

warrantless search of the daycare."  Compl. ¶¶ 37-38.  Defendant

makes two arguments for dismissal of Count I.

Defendant argues that Plaintiff lacks standing to challenge the

search at the daycare center because he did not have a reasonable

expectation of privacy, either because he was not the owner or

operator of the commercial property, or because he was only

authorized to work at the location printed on his badge, which was

not that of the daycare center.  Def.'s Mot. at 9-11.

Defendant relies on a Supreme Court case, <u>New York v. Burger</u>,

482 U.S. 691 (1987), which states that the owner or operator of

commercial property has a reasonable expectation of privacy.  This

reliance on <u>Burger</u> is misplaced.  That case did not hold that the

_____

        [6]    As noted earlier, Defendant has raised separate
additional arguments for each claim in its Motion to Dismiss.  For
purposes of judicial efficiency should any of the rulings herein be
overturned on appeal, the Court will address all of those
arguments.

-13-

owner or operator of commercial property is the only person who may have a reasonable expectation of property at a workplace.

In a case decided the same year as Burger, the Supreme Court reaffirmed its prior rulings that "[w]ithin the workplace context . . . employees may have a reasonable expectation of privacy against intrusion by police." O'Connor v. Ortega, 480 U.S. 709, 716 (1987). The Court explained that an employee's expectation of privacy is limited by the "operational realities of the workplace," id. at 717, and "must be assessed in the context of the employment relation." Id. The Court went on to say that "[g]iven the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." Id. at 718. See Gatlin v. United States, 833 A.2d 995, 1005-1006 (D.C. 2003)(finding no reasonable expectation of privacy when police officers entered areas of a charter school, including the main hallway, foyer, and outer portion of the main office, because the school was publicly funded and these areas were open to employees, students, and the public).

Here, as in Gatlin, the daycare center where Plaintiff was on duty is a part of the District of Columbia public school system. See "District of Columbia Public Schools, Pre-School (PS), Pre-Kindergarten (PK) and Head Start: A Guide for Parents," available at http://dcps.dc.gov/DCPS/Learn+About+Schools/Pre-schools%2C+Pre-

Kindergarten%2C+and+Head+Start (explaining that enrollment in a Head Start school is an option within the District of Columbia public school system). When Plaintiff was on duty at the daycare center, entry by students, daycare employees, parents, and the public could be reasonably expected. The parties do not dispute that Plaintiff was standing in the doorway when the MPD officers arrived and approached him. Def.'s Mot. at 1; Compl. ¶ 14. Based on these facts and the reasoning in <u>Gatlin</u>, the Court concludes that Plaintiff did not enjoy a reasonable expectation of privacy while on duty at the daycare center. Consequently, Plaintiff cannot contest the search because his Fourth Amendment right was not implicated in terms of the legality of the administrative search, <u>Thomas J. Brown v. United States</u>, 627 A.2d 499, 504 (D.C. 1993), and the Motion to Dismiss Count I for lack of standing to contest the search at the daycare center is **granted**.

   **D.   Defendant's Motion to Dismiss Count I for Unlawful Arrest Is Denied.**

   Where an arrest is made without a warrant, it must be supported by probable cause. Wardlaw v. Pickett, 1 F.3d 1297, 1304 (D.C. Cir. 1993). Probable cause is determined on the basis of the "totality of the circumstances," see Illinois v. Gates, 462 U.S. 213, 230 (1983), which requires that "the police had enough information to warrant a [person] of reasonable caution in the belief that a crime has been committed and that the person arrested has committed it," Barham v. Ramsey, 434 F.3d 565, 572 (D.C. Cir.

2006) (internal quotations omitted); see Gerstein v. Pugh, 420 U.S. 103, 111 (1975)(stating that probable cause to arrest exists when the facts and circumstances are sufficient to warrant a prudent person to believe that the individual has committed an offense).

The parties do not dispute that Plaintiff was arrested without a warrant.  Compl. ¶ 37.  Plaintiff, however, asserts that he was arrested without probable cause, id., because he was on duty at the daycare center "with the knowledge, consent and authority of [SOMB]," id. at ¶ 14, because his "firearm was . . . registered with [MPD]," id. at ¶ 24, and because Sgt. Moye, the supervising officer at the arrest, knew these facts at the time of the arrest, id. at ¶¶ 22, 24.   Defendant argues that the officers had probable cause to arrest, based on the their finding that he carried an unregistered gun.  Def.'s Mot. at 10.  Whether the officers had probable cause to arrest, however, is a factual issue, inappropriate for resolution at this time.[7]  The Court concludes that Plaintiff has sufficiently stated the legal elements of an unlawful arrest claim in his Complaint, and has supported them with sufficient facts to make the claim plausible.  See Twombly, 550

---

[7]    The Court declines to consider the affidavits parties have submitted regarding probable cause because discovery is required to resolve this issue.  See Baker, 150 F. Supp. 2d at 16; American Sharecom, 1989 WL 229397, at *2 (Aug. 28, 1989); Basel, 551 F.2d 395.  Delaying summary judgment will not prejudice the parties in any way.

U.S. at 555.  Therefore, Defendant's Motion to Dismiss Count I for unlawful arrest is **denied.**

> **E.** **Defendant's Motion to Dismiss Count II for Failure to State a Fifth Amendment Due Process Claim for Deprivation of Personal Property Is Granted.**

In Count II of the Complaint, Plaintiff asserts a § 1983 claim for violation of his Fifth Amendment right against deprivation "of life, liberty, or property without due process of law."  U.S. Const. Amend. V; Compl. ¶ 43.  Specifically, Plaintiff alleges that his personal property was unlawfully seized during the arrest and never returned, and that the arrest constituted an unlawful seizure of his person.  Compl. ¶ 44.

Defendant argues that Plaintiff "seems to assert a Fourth Amendment unlawful seizure claim" even though he identifies Count II as a Fifth Amendment claim.  Def.'s Mot. at 11.  The Supreme Court has made clear that Government seizure of personal property can violate both the Fourth and Fifth Amendments.  United States v. James Daniel Good Real Property, 510 U.S. 43, 49-52 (1993) (holding that seizures of real property for purposes of civil forfeiture are governed by both the Fourth and the Fifth Amendments).  Therefore, Plaintiff has stated a claim under the Fifth Amendment for the personal property seized at his arrest.

To state a Fifth Amendment Due Process violation, "Plaintiff must first have 'a property . . . interest that triggers Fifth Amendment due process protection" which arises "from 'state

-17-

law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Davis & Assoc., Inc. V. District of Columbia, 501 F. Supp. 2d 77, 81-82 (D.D.C. 2007)(quoting C & E Serv. Inc. of Wash. v. District of Columbia Water and Sewer Auth., 310 F.3d 197, 200 (D.C. Cir. 2002) and Bd. Of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). However, the Plaintiff does not identify what property was seized. He argues that "enumeration of such property is a proper subject for discovery, not a Motion to Dismiss." Pl.'s Opp'n at 19. However, Plaintiff must demonstrate what property interest he has that triggers Fifth Amendment protection in order to state a claim, and has failed to do so. Davis & Assoc., 501 F. Supp. 2d at 81; see Twombly, 550 U.S. at 555 (requiring "more than labels and conclusions" to state a claim).[8] Consequently, the Defendant's Motion to Dismiss Count II for failure to state a Fifth Amendment due process claim is **granted.**

### F. Defendant's Motion to Dismiss Count III for Malicious Prosecution Is Granted.

Plaintiff asserts a malicious prosecution claim in Count III, based on the criminal suit initiated against him for possession of an unregistered handgun. His basic argument is that the prosecution was initiated against him with malice because Defendant

---

[8] Although Plaintiff mentions the seizure of his person in Count II, he only states a claim for deprivation of a property interest. Thus, the Court assumes that Plaintiff did not intend to also contest his arrest in Count II.

knew that the allegations against him contained in Sgt. Moy's affidavit, were false.  Compl. ¶¶ 19-26, 48-54.

To state a claim for malicious prosecution under District of Columbia law, Plaintiff must show "(1) termination of the underlying suit in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as a result of the original action." Pitt v. District of Columbia, 491 F.3d 494, 501 (D.C. Cir. 2007)(citing Morowitz v. Marvel, 423 A.2d 196, 198 (D.C. 1980)).

Defendant challenges Count III on three grounds, the first of which is dispositive.  Defendant argues that Plaintiff cannot establish favorable termination of the underlying criminal suit because dismissal of Plaintiff's criminal suit was not on the merits.  Under District of Columbia law, "the termination must reflect on the merits of the underlying action".  Brown v. Carr, 503 A.2d 1241, 1245 (D.C. App. 1986).  In Brown, the District of Columbia Court of Appeals relied on the approach taken by the California state courts and cited with approval their reasoning. "If [the termination] is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement.  If, however, the dismissal is on technical grounds, for procedural reasons, . . . it does not

constitute favorable termination." Brown, 503 A.2d at 1245 (quoting Lackner v. LaCroix, 25 Cal.3d 747, 750,(1979)).

Here, Defendant submitted the District of Columbia Superior Court docket entry showing that the prosecutor dismissed Plaintiff's criminal charges. Def's Mot., Ex. F [Dkt. No. 17-6]. The document does not state any reason for termination of the prosecution. However, under District of Columbia law, "[a] dismissal shall be without prejudice unless otherwise stated." D.C. R. Crim. P. 48(a). "[A] dismissal without prejudice 'renders the proceedings a nullity and leave[s] the parties as if the action had never been brought.'" Thoubboron v. Ford Motor Company, 809 A.2d 1204, 1210 (D.C. 2002) (quoting Bonneville Assocs. Ltd. v. Barram, 165 F.3d 1360, 1364 (Fed. Cir. 1999) (citations omitted). To satisfy this essential element of malicious prosecution, Plaintiff bears the burden of alleging that his charges were dismissed with prejudice. See United States v. Jackson, 528 A.2d 1211, 1223 n. 29 (D.C. 1987) (stating that plaintiff failed to show that certain charges against him were dismissed with prejudice where "[t]he docket entry . . . simply reads that [the count in question] was dismissed by the government."). Plaintiff has failed to allege any facts that, if proven, would demonstrate that termination was on the merits. Without a showing of favorable termination, Plaintiff fails to state a claim for malicious

prosecution.   Therefore,  the  Motion  to  Dismiss  Count  III  is
**granted.**

   **G.   Defendant's  Motion  to  Dismiss  Count  IV,  Alleging
         Deprivation of a Property Interest, Is Denied.**

In Count IV of the Complaint, Harris asserts a § 1983 claim for
deprivation of a property interest, stemming from revocation of his
authority to work as a Special Police Officer and from a later 20-
day suspension of his authority to work as a Special Police
Officer.[9]  Compl. ¶¶ 56-57.[10]  Defendant argues that Count IV must
be dismissed because Plaintiff failed to exhaust the administrative
remedies made available to him in his suspension letter.  That
letter informed him he had the opportunity to "appeal [the]
decision in writing to the Office of the Chief of Police . . .
within twenty (20) days upon receipt of this notice."  Def.'s Mot.
at 15-16; Def.'s Mot., Ex. G [Dkt. No. 17-7].

Plaintiff  maintains  that  he  was  offered  no  "meaningful
opportunity to contest or appeal" his suspension.  Compl. ¶ 60.  He
further argues that the appeals process offered cannot "provide a
sufficient remedy such as monetary damages," that "the Attorney

_____

   [9]    The precise extent of Plaintiff's injuries resulting from
revocation/suspension of his work authorization is unclear.
Plaintiff indicates that he was sent two letters, one revoking his
authority to work indefinitely, and one suspending him from work
for twenty days.  Compl. ¶¶ 28, 32, 56-57.  Defendant consistently
refers to the action against Plaintiff as a suspension, and
provided a copy of the July 30, 2008 letter suspending him for
twenty days.  Def.'s Mot. at 15-16, Ex. G.

   [10]    See Footnote 5, supra.

General offers no authority or citation . . . which authorizes or mandates the appeals process," and that because Plaintiff was arrested by the same officials to which he was required to report his arrest, his suspension was a mere "pretext." Pl.'s Opp'n at 21-22 and n.5.

"State administrative exhaustion requirements" like the ones here "are treated as non-jurisdictional by federal courts, meaning that the exhaustion requirement is a prudential doctrine exercised as a matter of judicial discretion." Washington v. District of Columbia, 538 F. Supp. 2d 269, 278 (D.D.C. 2008). In such instances, "[a] plaintiff's failure to satisfy [the exhaustion requirement] . . . constitutes a failure to sufficiently plead a necessary element of a federal cause of action." Hidalgo v. FBI, 344 F.3d 1256, 1259-69 (D.C. Cir. 2003); Washington, 538 F. Supp. 2d at 278. To enforce the requirement, the Court must balance Plaintiff's interest in immediate judicial relief against the interests promoted by the exhaustion requirement, such as agency autonomy and judicial efficiency. Washington, 538 F. Supp. 2d at 278.

Exhaustion is not typically required for § 1983 actions. Milton S. Kronheim & Co. v. District of Columbia, 877 F. Supp. 21, 29 (D.D.C. 1995); Ifill v. District of Columbia, 665 A.2d 185, 194 (D.C. 1995). However, an exception exists for procedural Due Process claims, at least where "an alleged constitutional violation

is intertwined with a statutory one," and complete relief can be provided by the administrative process. <u>Nat'l Treasury Employees Union v. King</u>, 961 F.2d 240, 243 (D.C. Cir. 1992); <u>Washington</u>, 538 F. Supp. 2d at 278; <u>Hoey</u>, 540 F. Supp. 2d at 226-27. Relief, for purposes of the exhaustion requirement, is not "complete" unless it is "sufficient to right the wrong." <u>Randolph-Sheppard Vendors of Am. v. Weinberger</u>, 795 F.2d 90, 107 (D.C. Cir. 1986). In determining what remedy is sufficient, the reviewing court considers whether "the administrative proceeding affords the claimant a recovery commensurate with his or her remedy, regardless of whether he or she might recover more by filing a federal-law claim in federal court." <u>Johnson v. District of Columbia</u>, 368 F. Supp. 2d 30, 51 n. 9 (D.D.C. 2005); <u>Washington</u>, 538 F. Supp. 2d at 277.

Plaintiff seeks monetary damages in his Complaint and alleges that the Police Chief is not authorized to award them. The Defendant does not deny that allegation. Consequently, the relief sought will not be complete because it is not "sufficient to right the wrong," and Defendant's Motion to Dismiss Count IV, for failure to exhaust administrative remedies, is **denied.**

**H. Defendant's Motion to Dismiss Count V, Alleging an Eighth Amendment Claim for Excessive Conditions of Release, Is Granted.**

In Count V, Plaintiff asserts a ¶ 1983 claim for violation of his Eighth Amendment right against excessive bail. Const. Am.

VIII; Compl. ¶ 65.   Specifically, Plaintiff argues that the condition of his release--that he not possess a firearm in the District of Columbia--was excessive because it was based on Sgt. Moye's knowingly false affidavit.  Compl. ¶ 66; Def.'s Mot., Ex. F.

Defendant argues that Plaintiff fails to assert an Eighth Amendment violation.  While excessive release conditions can form the basis of an Eighth Amendment claim, <u>United States v. Salerno</u>, 481 U.S. 739, 754-55 (1987), there appears to be a paucity of law on the subject.  The Sixth Circuit, in <u>Bacon v. Patera</u>, 772 F.2d 259, 264 (6th Cir. 1985), explained why:

> Most eighth amendment claims have involved the constitutionality of state treatment for individuals already convicted of crimes. Those few cases finding eighth amendment violations in pre-conviction conduct by the state have all involved the infliction of some kind of physical abuse.  It would require a tremendous expansion of eighth amendment doctrine to hold that simply misuse of the state's prosecutorial machinery constitutes the type of "cruel and unusual punishment" that the eighth amendment was meant to prohibit (internal citations omitted).

Plaintiff claims no physical abuse whatsoever; he simply alleges a misuse of Defendant's prosecutorial authority.  Such allegations do not constitute an Eighth Amendment violation.  Therefore, Defendant's Motion to Dismiss Count V, Alleging an Eighth Amendment Claim for Excessive Conditions of Release, is **granted.**

**I.    Defendant's Motion to Dismiss Count VI, Alleging Excessive Force During Plaintiff's Arrest, Is Granted.**

Plaintiff asserts a § 1983 claim in Count VI that he suffered deprivation of a liberty interest in "[t]he raid and search without a warrant of the Plaintiff's workplace," which constituted excessive force.  Compl. ¶ 72.

Excessive force claims are examined under the Fourth Amendment reasonableness standard, to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Scott v. District of Columbia, 101 F.3d 748, 760 (D.C. Cir. 1996)(quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  "An officer will be found to have used excessive force only 'if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions.'" Oberwetter v. Hilliard, Civ. No. 09-0588, 2010 WL 274409, at *12 (D.D.C. Jan. 25, 2010)(quoting Rogala v. Dist. of Columbia, 161 F.3d 44, 54 (D.C. Cir. 1998)).  Under the "objective reasonableness" standard  officers are authorized to use "some degree of physical coercion or threat thereof" during the course of an arrest, and "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.  Graham, 490 U.S. at 395-97; Hirpassa, 648 F. Supp. 2d at 151.

Defendant argues that Plaintiff's claim fails because he did not allege injury or physical contact of any kind in his Complaint. Def.'s Mot. at 17. Plaintiff's only response is to allege facts in his Opposition--not his Complaint--which he believes would adequately flesh out his Count VI claim. This he cannot do. When considering a 12(b)(6) Motion to Dismiss, the Court may only consider those facts alleged in the Complaint. Henthorn v. Dep't of the Navy, 29 F.3d 682, 688 (D.C. Cir. 1994); Clark v. Flach, 604 F. Supp. 2d 1, 6 n.6 (D.D.C. 2009); Alexander v. Wash. Gas Light Co., 481 F. Supp. 2d 16, 25 (D.D.C. 2006).

The only facts Plaintiff alleges in the Complaint are that twelve officers conducted the arrest, with guns drawn. Compl. ¶ 72. Plaintiff includes no allegation of injury, apart from a deprivation "of his rights, privileges, and immunities." Id. at ¶ 73. Without any allegation that Plaintiff suffered an injury resulting from the force used, or any facts indicating physical contact that could support a finding of excessive force, Plaintiff has not stated a claim for excessive force. See Wasserman v. Rodacker, 557 F.3d 635, 641 (D.C. Cir. 2009)(stating that lack of "bruise or injury, . . . tends to confirm that [the arresting officer] did not use more force than reasonably appeared necessary"); Oberwetter, 2010 WL 274409, at *13 (dismissing an excessive force claim where plaintiff described the physical force used in an arrest but failed to allege injury arising from it);

<u>Hirpassa</u>, 648 F. Supp. 2d at 151 (dismissing a claim for excessive force where the claims were "not supported by any allegations as to the actual force used, physical contact between the parties, or physical harm or injury resulting from the arrest").  Therefore, Defendant's Motion to Dismiss Count VI, alleging excessive force during Plaintiff's arrest is **granted.**

**J.    Defendant's Motion to Dismiss Count VII, Alleging Intentional Infliction of Emotional Distress, Is Granted.**

Plaintiff asserts a common law claim in Count VII for Intentional Infliction of Emotional Distress ("IIED").  Compl. ¶¶ 76-78.  Defendant argues that the facts in this case do not support a finding of outrageous conduct, and therefore Plaintiff's claim must be dismissed.  Def.'s Mot. at 18.

"To establish a cause of action for intentional infliction of emotional distress a plaintiff must show 1) extreme and outrageous conduct on the part of the defendant which 2) either intentionally or recklessly 3) causes the plaintiff severe emotional distress." <u>Henson v. W.H.H. Trice and Co.</u>, 466 F. Supp. 2d 187, 193 (D.D.C. 2006)(citing <u>Larijani v. Georgetown Univ.</u>, 791 A.2d 41, 44 (D.C. 2002)).  To assess whether Plaintiff has stated a claim, the Court must consider "whether the defendant's conduct may be regarded as so outrageous as to permit recovery."  <u>Amons</u>, 231 F. Supp. 2d at 117 (quoting <u>Abourezk v. New York Airlines, Inc.</u>, 895 F.2d 1456, 1458 (D.C. Cir. 1990)).  Outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

Plaintiff alleges that he was arrested without a warrant during a search at the daycare center, that excessive force was used by 12 officers with guns drawn, that he was detained overnight, and that Sgt. Moye falsified his affidavit in support of a "Gerstein Proffer." See Gerstein, 420 U.S. 103. Compl. ¶¶ 13, 15, 20.[11]

These facts cannot in any way compare with the outrageousness of the facts alleged in Amons. The only fact alleged about which some question might be raised is the allegation that Sgt. Moye intentionally lied in his affidavit. The lie alleged in the Complaint is that Sgt. Moye stated in his affidavit that he had conducted "an administrative inspection of the daycare center" when, according to Plaintiff, he had "conducted a raid and warrantless search of the daycare center with more than a dozen officers, some with their guns drawn." Compl. ¶ 20. Assuming for the purposes of this Motion to Dismiss that this allegation can be

---

[11] As noted earlier, the Court will not consider the supporting facts Plaintiff alleges only in his Opposition brief. When considering a 12(b)(6) Motion to Dismiss, the Court may only consider those facts alleged in the Complaint. Henthorn, 29 F.3d at 688; Clark, 604 F. Supp. 2d at 6 n. 6; Alexander, 481 F. Supp. 2d at 25. Because Plaintiff has not yet had a "reasonable opportunity" for discovery, the Court also declines to consider the affidavits Defendant has submitted or to convert the Motion to Dismiss Count VII to a Motion for Summary Judgment. Baker, 150 F. Supp.2d at 16 (requiring that "[w]hen a district court converts a Rule 12(b)(6) motion to one for summary judgment, it must allow all parties a reasonable opportunity to present all material made pertinent to such a motion by Rule 56, and a chance to pursue reasonable discovery").

proven, it is not, as a matter of law, "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Abourezk v. New York Airlines, Inc., 895 F.2d 1456, 1458 (D.C. Cir. 1990).  Therefore, Defendant's Motion to Dismiss Count VII, alleging intentional infliction of emotional distress, is **granted.**

## IV. CONCLUSION

Upon consideration of the Motion, Opposition, Reply, the entire record herein, and for the reasons stated above, Defendant's Motion to Dismiss is **granted.**  An Order shall issue with this Memorandum Opinion.

March 22, 2010              /s/_____
                           Gladys Kessler
                           United States District Judge

**Copies via ECF to all counsel of record**